19cv2265(DWF/SER)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MINNESOTA

**RECEIVED**
AUG 14 2019
CLERK, U.S. DISTRICT COURT
ST. PAUL, MINNESOTA

Noah J. McCourt

Plaintiff,

v.

City of Bloomington

Defendant.

*CIVIL COMPLAINT*

**DEMAND FOR JURY TRIAL**

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1. Social media has become an important source of news and information about the government, and an important public forum for speech by, to, and about the government. In an effort to suppress dissent in this forum, The City of Bloomington has excluded—"blocked"—Twitter users who have criticized the City and its policies. This practice is unconstitutional, and this suit seeks to end it.

2. As the Supreme Court recognized just a few weeks ago, social media platforms like Facebook and Twitter provide "perhaps the most powerful mechanisms available to a private citizen to make his or her voice heard." Packingham v. North Carolina, slip op. at 8, 582 U.S.____ (2017). These platforms have been "revolution[ary]," not least because they have transformed civic engagement by allowing elected officials to communicate instantaneously and directly with their constituents. "Governors in all 50 States and almost every Member of Congress have set up [Twitter] accounts for this purpose," allowing citizens to "petition their representatives and otherwise engage with them in a direct manner," id. Twitter enables ordinary citizens to speak directly to public officials and to listen to and debate others

about public issues, in much the same way they could if they were gathered on a sidewalk or in a public park, or at a city council meeting or town hall.

3. Because of the way the City uses its twitter account at @BPD_MN, the account is a public forum under the First Amendment. Defendants have made the account accessible to all, taking advantage of Twitter's interactive platform to directly engage the Public. The PD's tweets routinely generate hundreds of comments in a vibrant discussion forums associated with each of the City's tweets. Further, Defendants have promoted their Twitter account as a key channel for official communication. Defendants use the account to make formal announcements, defend, report on meetings and promote the Department's policy positions.

4. On or around July 27, 2019, the defendant Sumaya Aden, the sister of Isak Aden, a 23 yr old who was killed by Bloomington PD, was blocked by the Defendant due to opinions she expressed in replies to tweets from the Bloomington Police Department. Because of their criticism of the City and it's employees, Sumaya is prevented and impeded from viewing the Defendant's tweets, from replying to the tweets, from viewing the discussions associated with the tweets, and from participating in those discussions. Defendants' actions violate the First Amendment rights of Sumaya as well as those of other Twitter users, like Plaintiff McCourt, that follow both Sumaya and the @BPD_MN account and are now deprived of their right to read and consider the speech of the dissenters who have been blocked.

5. The Plaintiff respectfully asks that the Court declare that the viewpoint-based exclusion of the individual Plaintiffs violates the First Amendment, and restrain the Defendants from restricting access.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §§ 2201–2202.

7. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) and (e)(1). All of the events giving rise to this claim occurred in this District.

## PARTIES

8. Plaintiff McCourt is a well-known advocate in the areas of Civil Liberties and disability rights. He was appointed by Minnesota Governor Mark Dayton to the Governor's Council on Developmental Disabilities. He also serves as the Chair of the State Subcommittee on Children's Mental Health. He also serves on the Steering Committee of the Governor's Council for Diversity and Inclusion. He sits on the board of directors of both the Minnesota Association on Children's Mental Health and Move Minnesota He also serves on the Public Policy Committees of ARC Minnesota. His expertise led him to speak before the United Nations in March of 2016.

9. The City of Bloomington is a municipal corporation and the public employer of members of the Bloomington Police Department.

## FACTUAL ALLEGATIONS

**A. Twitter**

10. Twitter is a social media platform with more than 300 million active users worldwide, including some 70 million in the United States. The platform allows users to publish short messages, to republish or respond to others' messages, and to interact with other Twitter users in relation to those messages. Speech posted on Twitter ranges from personal insult to poetry, but particularly relevant here is that a significant amount of speech posted on the platform is speech by, to, or about the government.

3

11. Users. A Twitter "user" is an individual who has created an account on the platform. A user can post "tweets," up to 140 characters in length, to a webpage on Twitter that is attached to the user's account. Tweets can include photographs, videos, and links. Some Twitter users do not tweet—i.e., publish messages—at all. Others publish hundreds of messages a day.

12. Timelines. A Twitter user's webpage displays all tweets generated by the user, with the most recent tweets appearing at the top of the page. This display is known as a user's "timeline." When a user generates a tweet, the timeline updates immediately to include that tweet. Anyone who can view a user's public Twitter webpage can see the user's timeline. Below is a screenshot of part of the timeline associated with the @BPD_MN Twitter account.



13. A Twitter user must have an account name, which is an @ symbol followed by a unique identifier (e.g. @BPD_MN), and a descriptive name (e.g., Bloomington Police Department). The account name is called the user's "handle." Alongside the handle, a user's webpage will display the date the user joined Twitter and a button that invites others to "Tweet to" the user. (This button is visible only to other Twitter users.) A user's Twitter webpage may also include a short biographical description; a profile

4

picture, such as a headshot; a "header" image, which appears as a banner at the top of the webpage; the user's location; a button labeled "Message," which allows two users to correspond privately; and a small sample of photographs and videos posted to the user's timeline, which link to a full gallery. Thus, part of the webpage for @BPD_MN recently looked like this:



14. <u>Tweets</u>. An individual "tweet" comprises the tweeted content (i.e., the message, including any embedded photograph, video, or link), the user's account name (with a link to the user's Twitter webpage), the user's profile picture, the date and time the tweet was generated, and the number of times the tweet has been replied to, retweeted by, or liked by other users. Thus, a recent tweet from @BPD_MN looks like this:



**Bloomington Police**
@BPD_MN

\*\*\*Police and Fire Dept Activity\*\*\*
8000 block of 3rd Ave. Garaage fire.
No injuries. All occupants evacuated ongoing investigation.

10:44 PM · Jul 7, 2019 · Twitter for iPhone

5 Retweets   18 Likes

15. By default, Twitter webpages and their associated timelines are visible to everyone with internet access, including those who are not Twitter users. However, although non-users can view users' Twitter webpages, they cannot interact with users on the Twitter platform.

16. Following. Twitter users can subscribe to other users' messages by "following" those users' accounts. Users see all tweets posted or retweeted by accounts they have followed. This display is labeled "Home" on Twitter's site, but it is often referred to as a user's "feed."

17. Verification. Twitter permits users to establish accounts under their real names or pseudonyms. Users who want to establish that they are who they claim to be can ask Twitter to "verify" their accounts. When an account is verified, a blue badge with a checkmark appears next to the user's name on his or her Twitter page and on each tweet the user posts.

18. Retweeting. Beyond publishing tweets to their followers, Twitter users can engage with one another in a variety of ways. For example, they can "retweet"—i.e., republish—the tweets of other users, either by publishing them directly to their own followers or by "quoting" them in their own tweets. When a user retweets a tweet, it appears on the user's timeline in the same form as it did on the original user's timeline, but with a notation indicating that the post was retweeted. This is a recent retweet by @NoahJSMcCourt:



19. Replying. A Twitter user can also reply to other users' tweets. Like any other tweet, a reply can be up to 140 characters in length and can include photographs, videos, and links. When a user replies to a tweet, the reply appears on the user's timeline under a tab labeled "Tweets & replies." The reply will also appear on the original user's feed in a "comment thread" under the tweet that prompted the reply. Other users' replies to the same tweet will appear in the same comment thread. Reply tweets by verified users, reply tweets by users with a large number of followers, and tweets that are "favorited" and retweeted by large numbers of users generally appear higher in the comment threads.

20. Comment threads. A Twitter user can also reply to other replies. A user whose tweet generates replies will see the replies below his or her original tweet, with any replies-toreplies nested below the replies to which they respond. The collection of replies and replies-toreplies is sometimes referred to as a "comment thread." Twitter is called a "social" media platform in large part because of comment threads, which reflect multiple overlapping conversations among and across groups of users. Below is a recent  @BPD_MN  tweet that prompted multiple comments:

7



21. Favoriting. A Twitter user can also "favorite" or "like" another user's tweet by clicking on the heart icon that appears under the tweet. By "liking" a tweet, a user may mean to convey approval or to acknowledge of having seen the tweet.

22. Mentioning. A Twitter user can also "mention" another user by including the other user's Twitter handle in a tweet. A Twitter user mentioned by another user will receive a "notification" that he or she has been mentioned in another user's tweet.

23. Tweets, retweets, replies, likes, and mentions are controlled by the user who generates them. No other Twitter user can alter the content of any retweet or reply, either before or after it is posted. Twitter users cannot prescreen tweets, replies, likes, or mentions that reference their tweets or accounts.

24. Protected tweets. Because all Twitter webpages are by default visible to all Twitter users and to anyone with access to the internet, users who wish to limit who can see and interact with their tweets

must affirmatively "protect" their tweets. Other users who wish to view "protected" tweets must request access from the user who has protected her tweets. "Protected" tweets do not appear in third-party search engines, and they are searchable only on Twitter, and only by the user and her approved followers.

25. Blocking. A user whose account is public (i.e. not protected) but who wants to make his or her tweets invisible to another user can do so by "blocking" that user. (Twitter provides users with the capability to block other users, but, importantly, it is the users themselves who decide whether to make use of this capability.) A user who blocks another user prevents the blocked user from interacting with the first user's account on the Twitter platform. A blocked user cannot see or reply to the blocking user's tweets, view the blocking user's list of followers or followed accounts, or use the Twitter platform to search for the blocking user's tweets. The blocking user will not be notified if the blocked user mentions her; nor will the blocking user see any tweets posted by the blocked user.

26. If the blocked user attempts to follow the blocking user, or to access the Twitter webpage from which the user is blocked, the user will see a message indicating that the other user has blocked him or her from following the account and viewing the tweets associated with the account. This is an example of a notification from Twitter that a user has been blocked:



### B. The @BPD_MN Account

27. The Bloomington Police Department established @BPD_MN in July 2015 and use the account as an instrument of the City to engage with the public about local events and to disseminate public information and announcements. Because of the way the account is used, it has become an important source of news and information about local government, and the comment threads associated with the tweets have become important forums for speech by, to, and about the City and its Police Department.

28. The Bloomington Police Department presents the account to the public as one that they operates in an official capacity rather than a private one. The Twitter page associated with the account is registered as the "Official account for the Bloomington, MN Police Department". The account bears a blue badge indicating that it has been verified by Twitter. The header shows a police car in the City of Bloomington

29. The @BPD_MN account is accessible to the public at large without regard to political affiliation or any other limiting criteria. The Department has not "protected" its tweets, and anyone who wants to follow the account can do so. They have not issued any rule or statement purporting to limit (by form or subject matter) the speech of those who reply to their tweets. The account has 7,721 followers – 2000

more than the official Twitter account for the City of Bloomington and over 4,000 more followers than the Bloomington Fire Department. The only users who cannot follow @BPD_MN are those whom they have blocked.

30. The Bloomington Police department uses @BPD_MN, often multiple times a day, to announce, describe their daily activities and promote local events. The Department sometimes uses it's account to share information relating to the business of the City of Bloomington, sometimes before the information is distributed through other sources. For example, on May 3, 2017, the Department tweeted that they were looking for Tips regarding a shooting that took place off of 90th Street and Portland Avenue.

31. Because of the way in which the Bloomington Police uses @BPD_MN account, the account has become an important channel for news about law enforcement and the City of Bloomington. Those who are blocked from the account are impeded in their ability to learn information that is shared only through that account.

45. The comment threads associated with tweets from @BPD_MN are important forums for discussion and debate about the Police, the City, Public announcements and government business. Typically, tweets from @BPD_MN generate many replies, which generate replies in turn. The @BPD_MN account is a kind of digital town hall in which the City and it's Police Department use the tweet function to communicate news and information to the public, and members of the public use the reply function to respond to the City and the department and to exchange views with one another.

**C. Defendants' blocking of Plaintiffs from the @BPD_MN account**

46. Plaintiff McCourt is a well-known advocate in the areas of mental health, disability and the protection of civil liberties. He was appointed by Minnesota Governor Mark Dayton to the Governor's Council on Developmental Disabilities. He also serves as the Chair of the State Subcommittee on Children's Mental Health. He also serves on the Steering Committee of the Governor's Council for

Diversity and Inclusion. He sits on the board of directors of both the Minnesota Association on Children's Mental Health and Move Minnesota He also serves on the Public Policy Committees of ARC Minnesota. His expertise led him to speak before the United Nations in March of 2016.He won a lawsuit against the City of Chaska and its Police Department in May 2019 for blocking his access to their social media sites.

47. Unlike his case against the City of Chaska, Plaintiff McCourt has not been blocked from the @BPD_MN account. He can access the Department's tweets on the same terms as other users, He can reply to the department directly, and he can participate fully in comment threads. The viewpoint-based exclusion of individual critics from this forum, however, prevents the Plaintiff and other forum participants from hearing the speech in which the critics would have engaged in had they not been blocked. The Defendants' viewpoint-based blocking of critics, violates the Plaintiff's First Amendment rights by distorting the expressive forum in which the Plaintiff and other non-blocked users participate.

## CAUSE OF ACTION

### Violation of the First Amendment of the U.S. Constitution

### (Declaratory and Injunctive Relief)

48. Plaintiffs repeat the allegations set forth above as if fully set forth herein.

49. Defendants' practice of blocking critics from the @BPD_MN Twitter account violates the First Amendment because it imposes a viewpoint-based restriction on the Plaintiff's right to hear.

## PRAYER FOR RELIEF

Plaintiff requests that this Court grant the following relief:

a. Issue an order granting Plaintiff judgment against Defendants, finding that Defendants violated Plaintiff's constitutional rights under the First Amendment to the United States Constitution and that Defendants are liable to Plaintiff for all damages resulting from these violations;

b. Issue an order enjoining Defendants restraining Defendants from blocking individuals from participation on the @BPD_MN media forum now or in the future.

C. Award of compensatory damages to Plaintiff against the Defendant

d. Award of punitive damages to Plaintiff against the Defendant

e. Award of reasonable attorney's fees and costs to Plaintiff pursuant to 42 U.S.C. $ 1988;

f. Award of such other and further relief as this Court may deem appropriate.

**THE PLAINTIFF HEREBY DEMANDS A JURY TRIAL**

Dated: July 19, 2019                                     Respectfully Submitted,

_Noah J. McCourt/es_

33 West Lake Street #404

Waconia, MN 55387

PRO SE